EDWARD DONARSKI, SPECIAL ADMINISTRATOR
OF ESTATE OF FRANK DONARSKI, AND
OTHERS v. TIM R. LARDY.
FARMERS INSURANCE EXCHANGE, GARNISHEE.

88 N. W. (2d) 7.

January 31, 1958—Nos. 37,151, 37,152, 37,153, 37,154.

*H. O. Chommie,* for appellants.
*Freeman, Peterson, Hoppe & Gaughan,* for respondent garnishee.
*Stanley N. Mortenson,* for respondent defendant.

FRANK T. GALLAGHER, JUSTICE.

Appeals from orders of the district court denying plaintiffs' alternative motions for amended findings or for a new trial. The appeals involve four separate actions in which identical findings of fact, conclusions of law, and orders for judgment were filed.

The plaintiff in two of the actions is Edward Donarski, representative of the estates of Frank and Leonard Donarski; in the other two the plaintiff is Albert Busse for himself and for his minor daughter, Donna Busse. The actions were originally commenced against the defendant, Tim R. Lardy. They arose out of an automobile accident on July 27, 1950, in which Frank and Leonard Donarski were killed and in which Donna Busse was injured. Judgment in each action was entered against the defendant, and thereafter a garnishment summons was served in each case against the Farmers Insurance Exchange.

A hearing was held in the garnishment matter and the trial court found, among other things, that on April 10, 1949, defendant procured a policy of insurance covering bodily injury, property damage, and medical reimbursement through the garnishee's local agent at Thief River Falls, Minnesota. That policy was renewed on October 10, 1949, for an additional 6-month period to expire on April 10, 1950.

On March 18, 1950, defendant negotiated a trade or exchange of his Ford car with his employer, the Forkenbrock Motor Company of Thief River Falls, for a 1939 LaSalle automobile. The balance owing on the LaSalle was to be carried by the Union State Bank of Thief River Falls on a conditional sales contract. As a condition for the acceptance of that contract, the bank required defendant to carry collision and comprehensive insurance on the LaSalle. It was determined at that time that the garnishee's agent should be called and that the insurance, including public liability, property damage, collision, and comprehensive insurance, would be placed in the garnishee company. It was also determined that the cost for this insurance, including carrying charges, would be added to the conditional sales contract and paid for by the defendant in monthly installments.

Pursuant to that arrangement, a Mr. David R. Drotts, the district agent for the garnishee, called upon the defendant at the Forkenbrock Motor Company. He was then informed of the type of insurance re-

quired and of the further details of the transaction involving the trade of automobiles. At this point Mr. Drotts represented to the defendant that the cost of the policy for the next six months would be $32. Relying on this representation by Drotts, the garnishee's agent, defendant executed and signed an application for the insurance coverage. The amount of $32 was then added to the purchase price of the LaSalle automobile and the conditional sales contract was thereupon executed and delivered to the Union State Bank. Following this, the sum of $32 was paid by the bank to Drotts, the agent, who retained $7.90, his commission on the added coverage, and remitted the balance of $24.10 to the garnishee.

This all occurred on March 18, 1950. On March 29, 1950, a policy providing for the various coverages was mailed to the defendant, effective March 18. Along with this policy a statement by the garnishee company was sent which indicated that the defendant still owed $13.74. This appeared at the bottom of the statement in the following words: "Balance Due Add Coverage ............ $13.74." Drotts, the agent, did not call upon the defendant nor explain to him the difference between the premium charged and that which he had quoted nor did the defendant call upon the garnishee or its agent for an explanation.

The policy of insurance here involved contained the following provision with respect to cancellation:

"* * * This policy may be canceled by the Exchange by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period * * *."

On July 12, 1950, the garnishee mailed a notice addressed to the defendant at Box 411, Thief River Falls, Minnesota, showing the amount due of $13.74, and giving notice that the cancellation date of the policy was 12:01 a. m., July 25, 1950, but this notice was not received by the defendant. A copy of the notice was mailed to Drotts, the agent, but he did not call upon defendant in regard to this amount still claimed due by the garnishee.

In addition to all of the foregoing facts the court found certain facts

with respect to the accident and the amount of the judgments subsequently obtained against the defendant and ordered dismissal of plaintiffs' causes of action against the garnishee on the ground that the insurance policy had been canceled.

The insurance company contends that the part of the order denying plaintiffs' motion for amended findings of fact, conclusions of law, and order for judgment is not appealable, citing Julius v. Lenz, 212 Minn. 201, 3 N. W. (2d) 10; In re Estate of Williams, 217 Minn. 634, 13 N. W. (2d) 736. It is true that an order denying the motion to amend findings is not appealable whether it is accompanied by a motion for a new trial or not, but the error claimed is reviewable when properly presented on appeal from an appealable order or judgment. Sullivan v. Ebner, 195 Minn. 232, 262 N. W. 574; Louis F. Dow Co. v. Bittner, 185 Minn. 499, 241 N. W. 569. Here the appellant in his motion for a new trial and on his appeal to this court has assigned as error that: (1) The conclusions of law and order for judgment are not justified or sustained by the findings of fact; and (2) the conclusions of law and order for judgment contained in the trial court's findings are not justified by the evidence and are contrary to law. Therefore issues raised under these assignments are properly before us on appeal.

■ Under the record here, we deem it necessary to determine only the first issue raised by the plaintiffs on appeal. That issue is whether the policy here was canceled when it appears from the court's finding that the notice of cancellation was not received by the insured. The provision relating to cancellation in the policy in question has been set forth above in our summary of the court's findings. It is the plaintiffs' contention here that this provision is ambiguous and capable of more than one interpretation, and further that the provision if interpreted as it was by the district court would be against public policy. On the other hand, the insurance company cites numerous decisions, such as Trinity Universal Ins. Co. v. Willrich, 13 Wash. (2d) 263, 124 P. (2d) 950, 142 A. L. R. 1; Sorensen v. Farmers Mutual Hail Ins. Assn. 226 Iowa 1316, 286 N. W. 494, 123 A. L. R. 1000; Wisconsin Natural Gas Co. v. Employers Mutual Lia. Ins. Co. 263 Wis. 633, 58 N. W. (2d) 424; Medford v. Pacific Nat. Fire Ins. Co.

189 Ore. 617, 219 P. (2d) 142, 222 P. (2d) 407, 16 A. L. R. (2d) 1181. Those cases all involved a provision for canceling an insurance policy which was essentially the same as the cancellation provision involved here. The holdings in those cases all seem to proceed on the assumption that the language of the provision makes receipt of notice by the insured unnecessary and that public policy does not prevent such a contractual provision. It is clear that those cases represent the weight of authority in this country with respect to the issue at bar. However, this court cannot agree with the holdings in those cases.

The insurance company urges upon us the rule of law that the courts may not rewrite the contract of the parties. We agree with this rule. However, we also have a well-established rule in this state which is that the language of a policy, being that selected by the insurer and for its benefit, must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured. 9 Dunnell, Dig. (3 ed.) § 4659(16), and cases cited under note 22.

In Freyberg v. London & Scottish Assur. Corp. 246 Minn. 417, 420, 75 N. W. (2d) 203, 205, we said:

"The rule in Minnesota is that an insurance policy is to be liberally construed in the favor of the insured and every reasonable doubt as to the meaning of the language used therein is to be resolved in favor of the insured."

In that case we also cited Weum v. Mutual Benefit Health & Acc. Assn. 237 Minn. 89, 54 N. W. (2d) 20, for the proposition that this court would consider the purposes for seeking insurance and would avoid an interpretation which would forfeit rights which the insured may have believed he was securing but which, because of the failure to use clear language, were cast in doubt.

We turn to the provision at hand which contains the following sentence:

"* * * The mailing of notice as aforesaid shall be sufficient proof of notice * * *."

The plaintiffs raise a question as to the meaning of the words "sufficient proof of notice." Under the contentions of the insurance company we would have to interpret this sentence to mean that mailing

the notice conclusively establishes that the insured has knowledge of the cancellation. Cases defining the exact term "sufficient proof" have not been found. However, the words "sufficient evidence" have been defined as meaning "such evidence as in amount is adequate to justify the court or jury in adopting the conclusion in support of which it is adduced." Walker v. Collins (8 Cir.) 59 F. 70, 74; United States v. Detroit Timber & Lbr. Co. (C. C. W. D. Ark.) 124 F. 393, 402.

The Minnesota court had occasion to discuss the meaning of the term "sufficient evidence" with respect to a criminal case in State v. Dineen, 10 Minn. 325 (407). In that case it was stated that sufficient evidence is that amount of *proof* which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt. Thus sufficient proof in neither of the above-cited cases is used in the sense of conclusively establishing something, but merely in the sense of supplying the evidence required to support a finding in the type of case at hand.

The mere fact that some degree of proof is required in the cancellation provision in question indicates that the parties contemplated that some notice of the cancellation of the insurance policy should actually be received by the insured. Therefore, construing this provision consistently with the rule of construction laid down in Freyberg v. London & Scottish Assur. Corp. *supra,* and in the light of the cases defining "sufficient evidence," it is our opinion that the provision means that mailing is a proper mode of communicating notice of cancellation to the insured, but that it does not thereafter relieve the insurance company of the obligation of establishing that the insured received the notice. It further establishes a rule of evidence entitling a trier of fact to find that an insured does have notice of cancellation when the company introduces evidence of the mailing of notice, but on the other hand it would also entitle the finder of facts to find that the notice was not received where the insured has testified that the notice was not received. In case the latter fact is found, as in the case at bar, it must be held that the policy was not canceled.

It is our further opinion that, if this provision were not so interpreted but interpreted as contended for by the company, it would be a violation of the public policy of this state.[1] There can be little doubt

---

[1]In this connection, see DeVries v. Spring Valley Township Mutual Fire Ins. Co. 167 Minn. 509, 209 N. W. 325, in which this court cited

that insurance is vitally affected with the public interest. In United States v. South-Eastern Underwriters Assn. 322 U. S. 533, 540, 64 S. Ct. 1162, 1167, 88 L. ed. 1440, 1450, Mr. Justice Black, speaking for the majority of the United States Supreme Court, had the following to say about insurance:

"* * * Perhaps no modern commercial enterprise directly affects so many persons in all walks of life as does the insurance business. Insurance touches the home, the family, and the occupation or the business of almost every person in the United States."

In Patterson v. Adan, 119 Minn. 308, 311, 138 N. W. 281, 283, 48 L. R. A. (N. S.) 184, Mr. Justice Holt had the following to say with respect to insurance:

"* * * The object and purpose of the contracting parties is not to be lost sight of in construing a contract [of insurance], nor is the rule that in case of ambiguity it must be resolved against the one who prepared the instrument. The language in the lengthy document before us was not the choice of the assured. Recognition needs be taken of the enormous growth of liability insurance of late years. The hazards of modern industries and the risks connected with some of the advantages of present-day life call for this kind of insurance. Policies attempting to fill this demand should, if possible, be construed so as not to be a delusion to those who have bought them."

This statement was made in 1912. It appears to us that it has even greater significance today than it did then.

Clearly the object of the insured when he buys a policy of the kind involved here is to receive protection in order that he might fulfill his obligations to those he has injured or damaged through the use of his automobile. The provision in the policy providing for notice of cancellation is obviously to give the insured an opportunity to procure other insurance. If the policy can be canceled at any time by merely depositing notice in the mails with no regard to whether or not notice is actually received, then the object of the notice may be completely

with approval Duffy v. Insurance Co. 142 N. C. 103, 55 S. E. 79, 7˜ L. R. A. (N. S.) 238.

nullified and there may be no chance of fulfilling the object sought in obtaining the insurance. It may be conceded that persons have the right to freely enter into contracts without impairment of such right. On the other hand, we do not believe that because of this it could be held that there is no limitation upon the mode of cancellation that an insurance company may place in its policy. Suppose an insurance company wrote into its liability policy that cancellation could be accomplished by merely posting its intention on a bulletin board at its home office. Could it be seriously contended that such a provision would be consistent with public policy? Yet in many instances, if the cancellation provision in question be interpreted as contended for by the company, the results would be the same as in the hypothetical case posed above.

It would therefore seem to us that knowledge on the part of the insured concerning the cancellation of an automobile insurance policy is so vitally important that a policy ought not to be canceled unless the insurance company has put forth more effort to communicate its intention to cancel the policy than would be required under the provision in question if interpreted as contended for by the insurance company.

Reversed.