[S. F. No. 20212. In Bank. Oct. 23, 1959.]

RAYMOND H. JENSEN et al., Appellants, v. TRADERS AND GENERAL INSURANCE COMPANY (a Corporation), Respondent.

*Assigned by Acting Chairman of Judicial Council.

Sheridan, Hoffman & Mendel, Nichols, Williams, Morgan & Digardi and Edward M. Digardi for Appellants.

Partridge, O'Connell, Partridge & Fall, Partridge, O'Connell & Partridge and Wallace O'Connell for Respondents.

Stanley Mosk, Attorney General, Harold B. Haas, Deputy Attorney General, Bronson, Bronson & McKinnon, Betts, Ely & Loomis, Early, Maslach, Foran & Williams, Moss, Lyon & Dunn, Snow & Holle, Veatch, Thomas & Carlson, Spray, Gould & Bowers, Frank Woodhead, Henry F. Walker, Perry H. Taft, Watters & Donovan, James B. Donovan, Patrick J. Hughes, John N. Reid, and Weinstock, Anderson, Maloney & Chase as Amici Curiae on behalf of Respondents.

McCOMB, J.—From a judgment in favor of defendant after trial before a jury in an action to recover upon an accident insurance policy, plaintiffs appeal.

*Facts:* On April 19, 1951, John DiMatteo signed a conditional sales contract for the purchase of a used car for his minor son, plaintiff Vincent DiMatteo. The contract con-

tained a request that the seller obtain insurance in a company acceptable to it and include the premiums therefor in the balance due under the contract.

Defendant, upon the request of the seller, issued its policy of public liability and property damage insurance, naming plaintiff Vincent DiMatteo and his father as insureds. The DiMatteos received the policy by mail and read it to check the coverage, but did not read the fine print. All premiums were paid from May 1951 through November 1951.

The policy contained, among others, this provision: ''This policy may be canceled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.''

On August 10, 1951, two separate notices of cancellation of the policy were placed in the mail, one addressed to plaintiff Vincent DiMatteo and the other to his father. Neither of these letters was ever returned to defendant's office. Both DiMatteos testified that no cancellation notices were ever received by them and that they had no knowledge of any cancellation until November 1951.

On November 15, 1951, Vincent had an automobile accident, in which plaintiffs Jensens and Morrow were injured. A few days later, Vincent and his father learned that the policy had been canceled.

Plaintiffs Jensens and Morrow filed an action against Vincent and served him with summons and complaint. The DiMatteos retained Attorney Bernard Mendel to represent them. He made demand upon defendant by telephone to defend the action and later sent a copy of the complaint and summons to defendant with a further demand to defend, which was refused. A judgment in the sum of $10,000 was entered against Vincent in favor of plaintiffs Jensens and Morrow.

The present action was then filed against defendant predi-

cated upon the insurance policy that it had issued. After trial, a verdict was returned in favor of plaintiffs, but the judgment rendered thereon was reversed on appeal. (*Jensen* v. *Traders & General Ins. Co.*, 141 Cal.App.2d 162 [296 P.2d 434].) After a second trial before a jury, a judgment in favor of defendant was entered. Plaintiffs appeal, urging that it was error for the trial court to give this instruction to the jury:

"When a policy of insurance provides as in this case that the policy may be cancelled by the company by mailing to the insured at the address shown on the policy a written notice stating when, not less than five days thereafter, such cancellation shall become effective and further provides that the mailing of such notice shall be sufficient proof of notice it is not necessary that the notice so mailed shall be received by the insured in order to be effective. If you find that the defendant Traders and General Insurance Company mailed a notice of cancellation to John and Jim DiMatteo they have done everything which the policy and the law requires of them and the policy ceased to remain in effect after the date specified in said notice regardless of whether or not the DiMatteos or either of them ever actually received such notice."

*Questions: First. Is the standard cancellation clause set forth, supra, which provides that cancellation may be effected by mailing notice, (a) ambiguous and/or (b) contrary to the public policy of the State of California?*

*No.* ■ It is the general rule that the parties to an insurance policy are free, subject to legislative restriction, to arrange the occasions, method, and means of cancellation by private agreement. (*Ohran* v. *National Automobile Ins. Co.*, 82 Cal.App.2d 636, 645 [187 P.2d 66] [hearing denied by the Supreme Court].)

■ It is likewise settled that in the construction of a contract, the office of the court is simply to ascertain and declare what, in terms or in substance, is contained therein, and not to insert what has been omitted or omit what has been inserted. (Code Civ. Proc., § 1858.)

■ This rule is applicable to insurance contracts, as was pointed out by Mr. Justice Spence, speaking for this court, in *New York Life Ins. Co.* v. *Hollender*, 38 Cal.2d 73, 81 [7], [237 P.2d 510], where he stated: "In construing life insurance policies as in the construction of other contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause. (Citations.) ■ While it is settled

law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer (citations), *the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction* so as to cast a liability upon the insurance company which it has not assumed (citations)." (Italics added.)

(a) The cancellation clause in the instant case is clear and unambiguous; it means exactly what it says. It provides that the company may cancel the insurance by mailing at least a five-day notice to the insured at the address he has given the company. It expressly provides that such mailing shall be sufficient proof of notice and that the effective date stated therein shall become the end of the policy period.

It is to be noted that the clause further provides that "delivery" of such cancellation notice shall be equivalent to mailing, thus making it clear that there are two methods of canceling the policy, one by mailing, and the other by delivering, notice of cancellation to the insured.

The clause is mutually available on the same terms to both parties to the policy. The unrestricted privilege of cancellation by either side exists for the benefit of the insured, whose interest in the covered property or need for protection may cease during the policy period, as well as for the benefit of the insurer.

In Automobile Liability Insurance, by Appleman (1938), in referring to a cancellation provision similar to that involved in the present case, the author said, at page 476: "By the terms of the standard policy, mailing of notice is the determining factor in cancellation—not the receipt of, or delivery to, the policyholder. Under other types of cancellation clauses this has been held perfectly valid and enforceable. Thus the policy is cancelled at the specified date if notice is properly mailed regardless of whether the notice is ever received by the policyholder." (*Cf. Savarese* v. *State Farm etc. Ins. Co.*, 150 Cal.App.2d 518, 521 [5] et seq. [310 P.2d 142].)

It is, of course, conceded that the Legislature, by statute, may prescribe that receipt of the notice is required for effective cancellation of an insurance policy. No such statute has existed, or now exists, in this state.

Referring to a similar cancellation provision in insurance policies, in 64 American Law Reports 2d (1959), page 988 et seq., it is stated: "The fourth type of clause is represented

by what is called the 'standard cancellation provision.' It stipulates that the policy may be canceled by the insurance company by mailing to the insured at his address written notice stating that in not less than 5 days thereafter such cancellation shall be effective. The specific provision is added that the mailing of notice shall be sufficient proof of notice and that the effective date and hour of cancellation stated in the notice shall mark the end of the policy. . . . The great majority of the cases hold—and doubtless correctly so—that under such provision the actual receipt of the cancellation notice by the insured is not a condition precedent to the cancellation of the insurance by the insurer in view of the fact that the express terms of the contract uphold the sufficiency of a notice deposited in the mail.''

Again, on page 1000, appears the following: ''Most of the more recent insurance policies contain a standard provision dealing with the cancellation of the policy by the insurance company. This so-called 'standard form' of policy cancellation clause reads as follows: 'This policy may be cancelled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.'

''Where the so-called 'standard cancellation clause' has been involved, a decided conflict in the decisions exists regarding the question whether actual receipt of the cancellation notice mailed by the insurer constitutes a prerequisite to the cancellation of the insurance. A majority of the decisions have held that the actual receipt of the cancellation notice by the insured is not a condition precedent to the cancellation of the insurance by the insurer, provided the cancellation notice itself contains a fixed date on which the cancellation is to become effective, but an opposite result has been reached in some cases under statutes requiring that the insured be given notice of a specified number of days.''

In support of the foregoing statements, American Law Reports 2d cites cases from 24 other states holding that the standard provision is clear and unambiguous, that mailing thereunder is sufficient, and that receipt of the notice need not be shown.

Typical of the decisions in other states are the following: In *Midwestern Ins. Co.* v. *Cathey*, (Okla.) 262 P.2d

434, 436, it is said: "There is no ambiguity in the language of the policy as contained in the cancellation provision. Under the very strictest construction of the policy, the contrasting [sic] language is not of doubtful meaning. Neither can it be said that the provision is unreasonable or unjust. Under the provision, the assured assumed the risk of receiving the notice when properly mailed to him at the address given in the policy. Under a policy containing the provision involved herein, it would place an unreasonable and unfair burden on the company to say that notice of the cancellation must be actually delivered to the assured. To make such a requirement would be placing additional words in the policy far beyond the actual terms of the policy agreed to by the parties."

In *Service Fire Insurance Co. of New York* v. *Markey* (Fla.), 83 So. 2d 855, 856, the court stated: "This is the standard form of policy cancellation used by insurance companies. It is unambiguous and must be construed according to its plain intent."

In *Medford* v. *Pacific Nat. Fire Ins. Co.*, 189 Ore. 617 [219 P.2d 142, 153 [9], 222 P.2d 407, 16 A.L.R.2d 1181] the court stated: "It will be observed that the older forms of policy require *notice to the insured* whereas that phrase does not appear in the policy with which we are now concerned. The provision here is that the policy may be canceled by mailing to the insured at the address shown in the policy a written notice. Again, instead of the earlier type of provision which makes mailing the equivalent of personal delivery, this policy, by its terms, makes clear that the mailing is the cancellation and provides that delivery shall be equivalent to mailing. Finally it is provided that the mailing of notice as aforesaid, shall be sufficient proof of notice. We hold that the defendant's answer was not demurrable by reason of the omission therefrom of an allegation that the mailed notice was also actually received."

In *Bradley* v. *Associates Discount Corp.* (Fla.), 58 So. 2d 857, 858 [2], appears this: "We cannot stretch the rule of strict construction of insurance contracts in favor of the insured to mean that where the language is plain and unambiguous it may be given an added meaning. The contract here contains nothing at all about the receipt of the notice but only about its mailing, and with that simple provision there seems to have been meticulous compliance." (Nonstandard but substantially identical clause.)

In *Wright* v. *Grain Dealers Nat. Mut. Fire Ins. Co.*, 186 F.2d 956, 958, the United States Court of Appeals for the Fourth Circuit said: ''While the plaintiff contends that the lack of evidence of receipt of the notice raises a presumption that it was not mailed, it is my view that under the terms of the policy contract failure to receive the notice has no bearing on the case since it was specifically agreed that the mailing should constitute proof of notice. To hold otherwise would, in effect, be undertaking to change the terms of the contract to provide that a notice must be *received* rather than *mailed*. . . .''

In *Donarski* v. *Lardy*, 251 Minn. 358 [88 N.W.2d 7], it was held that a clause similar to the one here involved was ambiguous. In that case the court singled out a few words from an entire paragraph and asserted that they merely expressed a well-established rule of evidence, and, by ignoring the rest of the paragraph, concluded that the contract was ambiguous and permitted construction. Such decision represents a minority rule and should not be followed in this state.

█ (b) The cancellation clause here involved is not opposed to the public policy of the State of California. The determination of public policy of states resides, first, with the people as expressed in their Constitution and, second, with the representatives of the people—the state Legislature.

█ This court well expressed the rule in *Stephens* v. *Southern Pacific Co.*, 109 Cal. 86, 89 [41 P. 783, 50 Am.St.Rep. 17, 29 L.R.A. 751], as follows: ''It has been well said that public policy is an unruly horse, astride of which you are carried into unknown and uncertain paths, and here that horse would be carrying us beyond all limits ever reached before, if respondent's position should meet with our approval. While contracts opposed to morality or law should not be allowed to show themselves in courts of justice, yet public policy requires and encourages the making of contracts by competent parties upon all valid and lawful considerations, and courts so recognizing have allowed parties the widest latitude in this regard; and, unless it is entirely plain that a contract is violative of sound public policy, a court will never so declare. 'The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.' (*Richmond* v. *Dubuque etc R. R. Co.*, 26 Iowa 191.) 'Before a court should determine a trans-

action which has been entered into in good faith, stipulating for nothing that is *malum in se*, to be void as contravening the policy of the statute, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical.' (*Kellogg* v. *Larkin*, 3 Pinn. 125; 56 Am.Dec. 164.) 'No court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds. The burden is on the defendant to show that its enforcement would be in violation of the settled public policy of this state, or injurious to the morals of its people.' (*Swann* v. *Swann*, 21 Fed.Rep. 299.)''

Again, in *Maryland Casualty Co.* v. *Fidelity etc. Co.*, 71 Cal.App. 492, 497 [236 P. 210], the court said: ''In considering this question many courts have cautioned against recklessness in condemning contracts as being against public policy. Thus, it has been said by an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. A similar caution is one to the effect that before a court refuses to recognize a contract which is made in good faith and which stipulates for nothing which is *malum in se* or *malum prohibitum* it should be satisfied that the advantage to accrue to the public from its holding is certain and substantial, not theoretical or problematical, and based upon certain economic or sociological problems. The power to invalidate agreements on the ground of public policy is so far-reaching and so easily abused that it should be called into action only in cases where the dangerous tendency clearly and unequivocally appears from the contract itself.''

In *Spangenberg* v. *Spangenberg*, 19 Cal.App. 439, 446 [126 P. 379], the court said: ''It is to the interest of the public generally that the right to make contracts should not be unduly restricted, and no agreement will be pronounced void as being against public policy unless it clearly contravenes that which has been declared by statutory enactment or by judicial decisions to be public policy, or unless the agreement manifestly tends in some way to injure the public.''

In *Superior Insurance Co.* v. *Restituto*, 124 F.Supp. 392, the District Court for the Southern District of California, at page 395 [2, 3], said: ''Parties to a contract may contract on such method of giving notice as they desire and unless public policy is contravened, the contract should be enforced as made. The use of the mails has become too well integrated into our economic and business life for such a public policy question to concern us. We conclude the notice by mail under

the clause in question effected a termination even though the notice was never received by the insured.''

In other states the courts have held that the standard clause here in question has been found free from criticism on the ground that it was against public policy. In *O'Daniel* v. *Michigan Mut. Liability Co.*, 88 F.Supp. 339, 342 et seq., the District Court for the Western District of Kentucky said: ''The cases clearly sustain this provision of an insurance policy and make mailing of the notice sufficient without requiring a showing of receipt of notice. . . .

''A contract of insurance is like any other contract. The parties here agreed to a definite way in which notice became effective. Had the insured sought for any reason to cancel the policy the cancellation would have been effective by mailing without proof of delivery. There was mutual consideration. Any other conclusion would be equivalent to this court ignoring the agreement of the contracting parties and making a new contract. The provision is reasonable and well within the bounds of public policy and must be enforced.''

The Wisconsin Supreme Court in *Putman* v. *Deinhamer*, 270 Wis. 157 [70 N.W.2d 652, 654], said: ''As far as we have discovered from a search of the authorities, the insurer has been held to a strict compliance with the policy terms of cancellation and a slight deviation invalidates the notice sent and the attempted cancellation. But we do not find from such authorities that when the policy terms are as they are here, and there is no conflicting statute, and the notice and its mailing complies with the policy provisions, the courts have refused to recognize the cancellation. In the absence of statutory declarations there appears to be no public policy removing the right to cancel in this manner from the field of contract. By section 204.30, Stats., the legislature has already modified the freedom of parties to contract in respect to liability insurance policies. These statutory restrictions are declarations of public policy and they do not include the principle now advocated by appellants. The provision in question is common in liability policies. We refrain from entering the legislative field to declare it void.''

Massachusetts, which has compulsory automobile liability insurance prescribed by statute, has provided for cancellation by mail, and receipt by the insured of notice mailed in accordance with the statute is not necessary to make it effective. (*Paloeian* v. *Day*, 299 Mass. 586 [13 N.E.2d 398, 400 [3]].)

The Insurance Commissioner of this state recom-

mended to the Legislature, and the Legislature adopted in 1957, section 651 of the Insurance Code, which reads: "Notwithstanding any other provision of this code, no cancellation by an insurer of an auto liability insurance policy shall be effective prior to the mailing or delivery to the named insured at the address shown in the policy, of a written notice of the cancellation stating when, not less than ten (10) days after the date of such mailing or delivery, the date the cancellation shall become effective." (Added by Stats. 1957, ch. 723, § 1.) It would therefore appear that the public policy in this state is directly contrary to the contention of plaintiffs.

Although this statute was not in existence at the time of the facts involved in the present case, it is significant that the Legislature is presumed to have been familiar with the construction of the standard cancellation clauses by courts throughout the United States and that it left no doubt of its intent to permit effective cancellation by mailing notice to an insured without regard to the receipt of such notice.

Had the Legislature not favored this method of cancellation, or believed it contrary to public policy, it could and would in so many words have so stated. Instead, it referred to "mailing or delivery" as equally lawful means of canceling an insurance policy.

Likewise, in fields other than automobile insurance, the Legislature has specifically prescribed the terminology of cancellation clauses (Ins. Code, §§ 10363, 10369.9), using language not materially different from that employed in the standard cancellation clause now before us. In view of (i) this court's dicta in *Naify* v. *Pacific Indemnity Co.*, 11 Cal.2d 5, 10 [1] [76 P.2d 663, 115 A.L.R. 476], where it said: "At the outset we are met with a question raised by *amici curiae* on behalf of various insurance companies, namely, whether a notice of cancellation, sent to the address of the assured as stated in the policy, and pursuant to a provision in the policy stating that the mailing thereof shall be sufficient notice, is effective despite lack of receipt by the insured. In this simple form, the question may perhaps be answered in the affirmative . . ." and (ii) the weight of authority throughout the nation, if the Legislature had intended to make mailing of notice with regard to these other classes of insurance effective only upon receipt, it would have done so by appropriate and unmistakable language.

A practical consideration of the problem here presented

discloses that the conclusions which we have reached are fair to both the insured and the insurer, if either desires to cancel an insurance policy.

The practice and custom of granting coverage immediately upon the request of insurance agents and brokers, leaving all opportunity to examine the acceptability of the insured to a future date, is an advantage to the business community and to the motoring public.

If insurers cannot cancel coverage in an equally prompt and certain manner, they will be forced to withhold this advantage. This raises the question whether more drivers would be uninsured because their financial and driving responsibility could not be investigated in time than would have been uninsured if immediate coverage were granted and cancellation ensued.

Insurance companies have endeavored to insure rapidly and provide for a concomitant prompt and certain method of cancellation. If the insured has drifted away without leaving an adequate address of his whereabouts and the insurer is compelled to accomplish delivery of notice, the insurer may have the hard choice of leaving the policy in force or of spending more to locate the insured than the premium owed or collected.

To require the insurer to prove receipt of a letter mailed or fail in its defense of cancellation would be to compel the proof of an act accomplished under secret circumstances, all the facts of which are in the possession of a reluctant opponent. The result would be extreme commercial uncertainty if delivery were to be a *sine qua non*. The insured who moves away or leaves on vacation can arrange for the forwarding of his mail; the insurer cannot do this for him if he fails.

If actual delivery were a prerequisite, these questions would arise: When is the policy canceled if the insured receives it in due course of the mail? When is the policy canceled if he receives it after more than the 10-day period prescribed in the notice? As of what date is he entitled to proration of the premium in either instance? What if the insured receives it and does not read it? What equities exist in favor of the insurer when the insured has purposely or inadvertently failed to communicate his new address?

If it is determined that a need exists for amendment of section 651 of the Insurance Code to correct supposed abuses, the Legislature is the proper forum for the determination of

the means to be adopted, not the courts. In its deliberations, the Legislature can more broadly study the public welfare. The state, through its Insurance Commissioner, can be heard, as can the varied interests of other segments of the public and affected industries. Such sources of information are not available to the judiciary.

■ Second. *Was it necessary for the insurer to return or tender the unearned premium in order to make the attempted cancellation effective?*

*No.* The policy provides: "If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. *Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective.* The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured." (Italics added.)

There is no ambiguity in this language. By its very terms, the clause provides that the return of the unearned premium need not be made at the time the cancellation becomes effective. It clearly makes such return a consequence of cancellation rather than a condition precedent thereto. (*Mangrum & Otter* v. *Law Union & Rock Ins. Co.*, 172 Cal. 497, 498 et seq. [157 P. 239, Ann.Cas. 1917B 907, L.R.A. 1916F 440].)

In *Jensen* v. *Traders & General Ins. Co.*, 141 Cal.App.2d 162, 166 [2] [296 P.2d 434] (hearing denied by the Supreme Court), in interpreting the identical provision involved in this policy, the court said: "The duty to refund is an obligation that springs into being when the company cancels the policy. Delay in performing, or failure to perform, this duty does not of itself render cancellation ineffective.

"A somewhat similar return of unearned premium clause was similarly interpreted by our Supreme Court in *Mangrum & Otter* v. *Law Union & Rock Ins. Co.*, 172 Cal. 497 [157 P. 239, Ann.Cas. 1917B 907, L.R.A. 1916F 440]. The rationale of that decision applies here."

See also *Genone* v. *Citizens Ins. Co. of New Jersey*, 207 Ga. 83 [60 S.E.2d 125, 128-129]; *Department of Labor & Industries* v. *Northwestern Mut. F. Ass'n*, 13 Wn.2d 288 [124 P.2d 944, 945 [2, 3]] ; *Wallace* v. *State Farm Mut. Automobile Ins. Co.*, 187 Tenn. 692 [216 S.W.2d 697, 700 [1] et seq.] ;

800

*Medford* v. *Pacific Nat. Fire Ins. Co., supra* (Ore.), 219 P.2d 142, 151 [8] ; *Superior Insurance Co.* v. *Restituto, supra* (U.S. Dist. Ct., S.D. Calif.), 124 F. Supp. 392, 396 ; *Parks* v. *Lumbermens Mut. Casualty Co.,* 327 Ill. 356 [64 N.E.2d 210, 212 [2], [3]] ; *Leslie* v. *Standard Acc. Ins. Co.,* 327 Ill.App. 343 [64 N.E.2d 391, 393 [5]] ; *American Fire & Casualty Co.* v. *Combs,* (Ky.) .273 S.W.2d 37, 38-39; *Gibbons* v. *Kelly,* 156 Ohio 163 [101 N.E.2d 497, 499 [2] et seq.] ; *Turney* v. *Allstate Ins. Co.,* 167 Pa. Super. 175 [74 A.2d 730, 732 [1]] ; *Putnam* v. *Deinhamer, supra* (Wis.), 70 N.W.2d 652, 655 [3].

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., and White, J., concurred.

Peters, J., did not participate herein.