## BITUMINOUS CASUALTY CORPORATION v. ED SWARTOUT.

133 N. W. (2d) 32.

January 29, 1965—No. 39,318.

*Blethen, Ogle, Gage & Krause,* for appellant.
*Robb, Robb & Van Eps,* for respondent.

ROGOSHESKE, JUSTICE.

Plaintiff sued to recover premiums claimed to be due under a retrospective premium plan after it had canceled an insurance contract for reasons other than nonpayment of premiums.

Defendant is a gravel contractor who operates a fleet of trucks and other equipment on road construction work. Effective July 1, 1957, plaintiff issued a workmen's compensation policy and a comprehensive liability policy covering defendant's operations for a 1-year term. An endorsement, called a retrospective premium endorsement, applied to the policies and renewals thereof for a period of 3 years and provided that the insured would pay a fixed, standard premium computed under the policies which would be adjusted up or down, depending on his individual loss experience, according to a detailed formula stated in the endorsement.

The underlying purpose of a retrospective rating plan is to make the premium reflect more closely the actual loss and cost experience of the insured. A tentative or standard premium is paid initially and thereafter adjusted at stated times. Insureds with a low loss experience are rewarded and those with a high loss experience are penalized. The plan thus encourages a program of safety education and accident prevention by the insured.[1]

During the period the policies were in effect, defendant's loss experience exceeded the standard premium by a substantial amount. At the time of cancellation on April 13, 1959, he had incurred losses amounting to $24,612. The retrospective premium for these losses, computed according to the endorsement, would have been $29,534.40. Under the endorsement, however, the maximum premium could not exceed 150 percent of the standard premium. The total premium claimed to be due under the endorsement, plus premiums of $1,578.80 due under policies not covered by the plan, was $21,242.80. Of this total, defendant admits liability for $16,158.99, which he has paid, but he denies the remainder because he contends that the retrospective rating plan does not apply when the contract is canceled for reasons other than nonpayment of premiums. If the rating plan is applicable, however, defendant admits that the $5,083.81 difference is a correct computation of the amount for which he would be liable.

The case was submitted to the trial court on stipulated facts, including the two policies and attached endorsements. The trial court found for the plaintiff-insurer and the defendant moved to amend the findings of fact and conclusions of law or for a new trial. From a denial of that motion, he appeals. Since the facts are undisputed, only a question of law—the interpretation of the insurance contract—is presented.

The retrospective premium endorsement consists of two tables and

---

[1]For cases describing the plan in more detail, see State Comp. Ins. Fund v. McConnell, 46 Cal. (2d) 330, 294 P. (2d) 440; Oil Well Drilling Co. v. Associated Ind. Corp. 153 Tex. 153, 264 S. W. (2d) 697; Associated Ind. Corp. v. Oil Well Drilling Co. (Tex. Civ. App.) 258 S. W. (2d) 523.

six major categories or sections. The tables contain typed-in figures to be used in computing the premium for the specific insured and provide that the minimum retrospective premium shall be 45 percent of the standard premium and the maximum, 150 percent. The first three sections contain definitions of terms. The fourth states when the retrospective premium will be computed and provides for computation should the insured go out of business. The sixth section provides for the result if any state should revise certain rating factors while the contract is in force. The fifth section, headed "Cancelation," is the one upon which this case turns. It provides:

"The cancelation or non-renewal, prior to the end of the three year period, of any policy designated in Table I shall be deemed to be cancelation of the retrospective rating plan, and the premium for insurance subject to Plan D [the retrospective rating plan] for the period such policies have been in force shall be computed in accordance with the other provisions of this endorsement, provided:

"(a) Cancelation by the named insured. In the event of cancelation by the named insured, (1) the standard premium shall be computed as the sum of the audited standard premium for all completed annual periods and the short rate standard premium for the period in which cancelation is effective; the minimum retrospective premium shall be the standard premium so computed; (2) in computing the maximum retrospective premium, the standard premium shall be computed as the sum of the audited standard premium to the date of cancelation and the estimated standard premium from the date of cancelation to the end of the three year period.

"(b) Cancelation by the company. In the event of cancelation by the company because of non-payment of premium by the named insured, the maximum retrospective premium shall be computed on the basis of the audited standard premium from the beginning of the three year period to the date of cancelation and the estimated standard premium for the balance of the three year period.

"(c) Cancelation of part of insured's operations. Neither the insured nor the company may cancel the insurance applying to a part of the operations of the insured."

Absent the cancellation section in the endorsement, the cancellation clauses in both policies to which it is attached provide that upon cancellation by the company for any reason the premium owed would be computed pro rata, and that if the insured should cancel the premium would be computed according to a short-rate table (which would result in a rate slightly higher than pro rata). By attachment of the endorsement, however, the parties intended its provisions to prevail if inconsistent with the provisions of the policies.[2] We therefore look to the cancellation section of the endorsement to ascertain what was intended in the event of arbitrary cancellation by the company.

The most significant portion of the section is the introductory paragraph. Plaintiff contends that the language canceling the retrospective premium plan merely means that the contract as a whole (the endorsement and policy or policies) is nonseverable and that a cancellation terminates all parts of it. According to this argument, cancellation of the retrospective rating plan means only that the endorsement shall have no future operation. The premium for the past period then would be determined by the "other provisions of this endorsement," i. e., the retrospective plan.

Defendant interprets the first paragraph as nullifying the retrospective rating plan and contemplating that premiums owed are to be computed according to "other provisions of this endorsement" not related to the plan. These "other provisions," defendant argues, are clause 1(a),[3] which states that part of the final premium will be comprised of premiums for insurance not subject to Plan D (the rating plan) computed in accordance with the provisions of the policies, and clause 3(a),[4] which defines the standard premium for insurance subject to

---

[2] Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19.

[3] Clause 1(a): "Final Premium. The final premium for such policies is the sum of:

"(a) the premium for the insurance not subject to Plan D, as specified in Table I, computed in accordance with the provisions of such policies, other than this endorsement * * *."

[4] Clause 3(a): " 'Standard premium' means the premium for the insurance subject to Plan D computed in accordance with the provisions of the

the endorsement as computed in accordance with the provisions of the policies.

Both plaintiff and defendant present plausible constructions of the first paragraph of the cancellation section. However, neither interpretation renders that paragraph definite and clear. If, as plaintiff argues, the language that the retrospective rating plan is canceled means no more than that the entire contract is nonseverable, there is no need for that language. Since the contract would be nonseverable without that language,[5] there must be some other reason for it. Yet plaintiff does not supply that reason. Defendant does give us the reason: It means that the retrospective rating plan shall not be used to compute the premium. But defendant is at a loss to explain what "other provisions" there are in the endorsement which are not a part of the retrospective rating plan. He can only point to two, but they are merely provisions which define terms—they say nothing substantive about computation of premium. The two portions of the first paragraph of the cancellation section therefore are at odds with each other. While the first portion seems to say that upon cancellation of the contract the retrospective rating plan shall not be in effect, the second portion decrees that the premium shall be computed in accordance with the other provisions of this endorsement, which other provisions, but for two definitional terms, are the terms of the retrospective rating plan.

If this confusing first paragraph of the cancellation section of endorsement is ignored, the remainder of the clause makes some sense. Subd. (a) covers cancellation by the insured and provides the means of computing minimum and maximum retrospective premiums. In effect, for purposes of computing maximum and minimum retrospective premiums, it defines standard premium especially for the case where the insured cancels. By implication, the subdivision intends that the other definitions and provisions of the endorsement apply in that case as in any other case. Subd. (b) covers the situation where the com-

policies, other than this endorsement and exclusive of the application of any premium discount endorsement."

[5]Fleisher Engineering & Const. Co. v. Winston Bros. Co. 230 Minn. 554, 42 N. W. (2d) 396.

pany cancels for nonpayment of premium. It supplies a special definition of standard premium only for the purpose of computation of the maximum retrospective premium. By implication, the definitions of other terms are as defined generally by the endorsement, and computation of the final premium is done according to the provisions of the endorsement.

When taken together with subds. (a) and (b), the first paragraph of the cancellation section has some meaning. The subdivisions state certain special definitions in specific cases; they contemplate application of the retrospective premium plan, except for those special definitions, in accordance with the "other provisions" of the endorsement. Therefore, the meaning of the cancellation section when the contract is canceled by the insured or by the company for nonpayment of premium must be that the retrospective rate will apply under the general terms of the endorsement, except for the special definitions contained in the specific subdivisions.

However, there is no specific subdivision relating to application of the retrospective rating plan upon cancellation by the company for a reason other than nonpayment of premium. Absent some indication that the retrospective plan is to apply in that situation, an intent that it should apply cannot be derived from the self-contradictory first paragraph of the section alone. Only after tortuous construction is it apparent that the plan applies when cancellation is done for the reasons enumerated in subds. (a) and (b). But there is nothing in the contract to notify the insured that upon arbitrary cancellation by the company his premium will be retrospective and computed on the basis of a short-term, high loss experience. Clear and definite terms are necessary to create a consequence so drastic. Since the first paragraph, standing alone, is devoid of any meaning whatsoever rather than susceptible of a double meaning, we need hardly reach the principle that ambiguous phrases in an insurance contract must be construed against the insurer.[6] Our holding, however, is in harmony with that

---

[6]E. g., Donarski v. Lardy, 251 Minn. 358, 88 N. W. (2d) 7; Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 30 N. W. (2d) 341.

rule.[7] We cannot hold an insured liable when the insurer's own language leaves that liability in doubt.

Since the endorsement does not provide the consequences upon arbitrary cancellation by the insurer, the general cancellation clauses in the policies themselves should apply. These clauses clearly state that the premium shall be prorated upon cancellation by the company. This sum the defendant has paid.

In reaching this conclusion we are mindful that the only other case that apparently has considered the issue of this case, Wimpy v. Maryland Cas. Co. (5 Cir.) 223 F. (2d) 649, decided it differently. The obvious distinguishing feature of the two cases is the difference between the cancellation clauses in the respective endorsements, for the Wimpy clause reads (223 F. [2d] 650):

"Cancellation by the Company—In the event of cancellation by the Company the standard premium for the period that the Policy is in force is to be computed on a pro rata basis and the retrospective premium shall be computed on the basis of such standard premium * * *."

This clause, unlike the one in our case, clearly and obviously contemplates application of the retrospective premium plan upon arbitrary cancellation by the company. There being no such clause present here, the cancellation clauses of the policies apply and the defendant has paid all premiums due.

Reversed and judgment ordered for defendant.

---

[7] If the insured's loss experience had been very good, his premium would be greater if computed under the policy than under the retrospective rating plan. However, the insurer is hardly likely to cancel the policy arbitrarily when the insured is successful in doing what the policy encourages him to do—to maintain safe operations. Therefore, our interpretation of the cancellation clause is, in effect, in favor of the insured.