360 A.2d 552.

Pasco Trotta *vs.* Elizabeth D. Pono *vs.*
Auto Club Insurance Agency, Inc. *et al.*

JULY 27, 1976.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

Paolino, J. The principal question raised by this appeal is whether the public policy of this state is violated by a provision in an automobile insurance policy which provides that the mailing of a notice of cancellation to the named insured at the address shown in the policy is sufficient proof of notice of cancellation.

The plaintiff, Pasco Trotta, brought a civil action against defendant, Elizabeth D. Pono, for damages allegedly suffered as a result of a motor vehicle accident on August 22, 1970. The defendant's insurance company refused to defend the action against her and therefore

she brought a third-party action against third-party defendants, Automobile Club Insurance Agency, Inc. (Automobile Club), and Lumbermens Mutual Casualty Company (Lumbermens), alleging that she was insured by Automobile Club, which was the agent of Lumbermens, and that Automobile Club and Lumbermens had wrongfully refused to defend the action brought against her by plaintiff. Automobile Club answered and alleged that its policy with Mrs. Pono was cancelled effective June 16, 1970.

At the time of the trial the primary action between plaintiff and Mrs. Pono was severed from the third-party action. The latter action was tried before a justice of the Superior Court without a jury. It was stipulated that the only issue before the court was whether the insurance policy was in effect at the time of the accident. After the hearing, the trial justice found that the policy was in effect at the time of the accident and a judgment was entered in favor of Mrs. Pono against third-party defendants Automobile Club and Lumbermens ordering Automobile Club to defend and pay any judgments rendered against Mrs. Pono in the action by plaintiff against her. The case is here on the third-party defendants' appeal.

Mrs. Pono's testimony is in substance as follows. She had been insured by Automobile Club for about 7 years. Early in 1970 she contracted for an automobile insurance policy effective January 27, 1970 through January 27, 1971, for a premium of $151. She made payments of $50 to Automobile Club on February 7, 1970 and $51 on February 14, 1970. She contacted Automobile Club in the spring and inquired whether her insurance was fully paid and she was told that it was. On August 23, 1970, she telephoned Automobile Club to inform it that she had had the accident with plaintiff on the previous day. She was told at that time that her policy had been cancelled. On

the following day she personally visited Automobile Club where she was told that the policy had been cancelled for nonpayment of the remaining premium of $50. Automobile Club thereupon reinstated her insurance effective August 24, 1970.

On August 28, 1970, Mrs. Pono received a $43 check from Automobile Club as a return of premium of the cancelled insurance policy. She denied ever having received a cancellation notice for nonpayment of premiums.

At trial, after the third-party plaintiff, Mrs. Pono, rested, Automobile Club called one Ruth Dadley as a witness. Her testimony was in substance as follows. She was an employee of Automobile Club in 1970. On June 2, 1970, she prepared a cancellation notice and a certificate of mailing. Said notice cancelled Mrs. Pono's policy effective June 16, 1970 for nonpayment of the $50 balance due on the premium. The usual business practice was for a messenger to take the notice and the certificate of mailing to the post office and upon receipt the post office would stamp the date of receipt on the certificate of mailing. The certificate of mailing in this case was stamped on June 2, 1970 and returned to Mrs. Dadley who thereupon attached it to the carbon copy of the cancellation notice. She testified that she gave the notice to the messenger and that she received back the stamped certificate of mailing but she could not say of her own knowledge that the notice was actually deposited at the post office.

A copy of the insurance policy is in evidence. It is undisputed that Automobile Club intended to effect a cancellation of the policy in accordance with Conditions 16 and 17 thereof which provided that Automobile Club had a right to cancel upon 10-days' notice for nonpayment of a premium due and which further provided that the mailing of notice was deemed to be "sufficient proof of

notice." For convenience a copy of Conditions 16 and 17 is attached hereto as an appendix.

In his decision the trial justice found as a fact that Mrs. Pono did not receive notice of the cancellation of her policy and that the policy was in full force and effect on date of accident. He noted that the fact that the premium rebate was not sent until August 28, 1970 was some evidence that she never received the notice. As a matter of law he adopted the minority view that a provision in an insurance policy which provides that proof of mailing is sufficient proof of notice is void as against public policy. He therefore ordered third-party defendants to defend Mrs. Pono in the primary action, but stayed that action pending the appeal of third-party defendants in the case at bar.

The third-party defendants, hereinafter referred to as appellants, contend that the trial justice erred in holding that a provision in an insurance policy which provides that proof of mailing is sufficient proof of notice is void as against public policy. They argue that contract provisions which are otherwise valid should not be declared unenforceable as against public policy unless there is a clear showing that the right to contract between the parties should be abrogated in the interest of the general public. No such showing was made in the case at bar and therefore, they argue, we should adopt the majority rule which provides that, in the absence of a statute to the contrary, cancellation clauses similar to the one here are valid and it is not necessary for the insured to receive actual notice since the parties were free to contract as they saw fit. Appellants cite *Smith* v. *Nationwide Mut. Ins. Co.*, 5 Conn. Cir. Ct. 454, 256 A.2d 687 (1968) and *Young* v. *State Farm Mut. Auto. Ins. Co.*, 213 A.2d 890 (D. C. App. 1965).

The third-party plaintiff, Mrs. Pono, argues that the majority rule is as stated by appellants, but she argues that insurance policies should generally be construed liberally in favor of the insured and therefore we should follow the minority view as set forth in *Donarski* v. *Lardy*, 251 Minn. 358, 88 N.W.2d 7 (1958).

As previously stated, the trial justice adopted the minority rule. However, there is nothing in the record indicating that the parties discussed or brought to the attention of the trial justice the existence of any statutory provision or regulation pertaining to the giving of notice of cancellation in a case such as this. In fact, the transcript indicates that counsel stated that there were none.

General Laws 1956 (1968 Reenactment) §27-9-41 provides that the commissioner of insurance may promulgate reasonable rules and regulations and §27-8-11 specifically authorizes him to promulgate regulations concerning the cancellation and renewal of liability and property damage insurance for private passenger automobiles. Citing §27-9-41 but not §27-8-11 the commissioner issued Regulation XVI, entitled "Automobile Insurance Policies; Cancellation and Renewal Provision," effective May 1, 1969. Although the existence of this regulation was not brought to our attention by counsel, we shall take judicial notice of its promulgation.

Section 3(A) of Regulation XVI provides that the insurer may cancel an automobile insurance policy "* * * by mailing to the insured at the address shown in the policy written notice * * *."[1] Section 6(B) of the regulation pro-

---

[1]Section 3 reads as follows:

"(A) The provisions of subsection two shall apply to each and every coverage or limit afforded under the policy but the insurer, at its option and in lieu of outright cancellation, may reduce the limits afforded for automobile bodily injury liability and property damage liability (subject to compliance with the minimum financial security

vides that "[p]roof of mailing of a notice of cancellation
* * * shall be sufficient proof of the giving of notice * * *."[2]

Conditions 16 and 17 of the policy are in conformance
with Regulation XVI. They are referred to within the
insurance industry as the "standard form" of cancellation
clauses and have two distinctive elements, namely (1)
cancellation may be effectuated by mailing and (2) proof
of mailing is deemed to be sufficient proof of the giving
of notice.

In construing the "standard form" clause the majority
of jurisdictions holds that the mailing of notice is suffi-
cient to effectuate cancellation and that actual receipt is
not required. Annot., 64 A.L.R.2d 982, 1000 (1959); 2
Long, *The Law of Liability Insurance* §15.02 (1975). These
decisions are generally based on the fiction that the
insured has designated the postal department as his agent
to receive notice when he enters into an insurance con-
tract. These cases hold that because the express terms of

_____

requirements) or cancel any other coverage, by mailing to the in-
sured at the address shown in the policy written notice stating the
specific reason or reasons relied upon by it for its action and when,
not less than thirty days thereafter, such cancellation or reduction
of limits shall be effective.

"(B) No insurer shall exercise its right to cancel a policy unless
a written notice of cancellation is mailed or delivered to the named
insured, at the address shown in the policy, at least thirty days
prior to the effective date of cancellation, except that when can-
cellation is for non-payment of premium such notice shall be mailed
or delivered to the named insured at the address in the policy at least
10 days prior to the effective date of cancellation and shall include
or be accompanied by a statement of the reason therefor. This sec-
tion shall not apply to the failure to renew a policy."

[2]Section 6(B) reads as follows:
"(B) Proof of mailing of a notice of cancellation, reduction of limits,
elimination of coverages or of intention not to renew or proof of
the mailing of the reasons therefor, to the named insured at the
address shown in the policy, shall be sufficient proof of the giving
of notice and the giving of reasons required by this Regulation."

the contract uphold the adequacy of notice so delivered and because such terms are clear and unambiguous, they ought to be enforced. Annot., 64 A.L.R.2d at 1002. Connecticut follows the majority rule on the basis of the reasoning that it is always competent for parties to contract as to how notice shall be given unless their contract in this respect violates the law or public policy. *Smith* v. *Nationwide Mut. Ins. Co., supra.*

A small minority of jurisdictions holds that mailing is a proper means of cancellation, but that the "standard form" clause does not relieve the insurer of showing actual receipt of such notice. Annot., 64 A.L.R.2d at 1012; 2 Long, *supra* at §15.10. The leading case for the minority view is *Donarski* v. *Lardy, supra,* in which the court, interpreting a "standard form" clause, held that the words "sufficient proof of notice" merely established a settled rule of evidence which entitles a trier of fact to find or not to find actual notice when the insurer introduces evidence of mailing and the insured denies receipt. Because of the vital importance of insurance, the Minnesota court felt that any other interpretation would violate public policy. *Id.* at 363, 88 N.W.2d at 11. Kansas also subscribes to the *Donarski* reasoning, *Koehn* v. *Central Nat'l Ins. Co.,* 187 Kan. 192, 354 P.2d 352 (1960).

The *Donarski* and *Koehn* cases involved interpretation of "standard form" cancellation clauses where no state statute dealt with the issue of cancellation. What happens when there is a statute or duly promulgated regulation dealing with the question of cancellation? In *Jensen* v. *Traders & Gen. Ins. Co.,* 52 Cal.2d 786, 345 P.2d 1 (1959), the California Supreme Court reversed a lower court and adopted the majority view on the basis that the Legislature had adopted a statute conforming substantially to the "standard form" cancellation clause. That court held that if the Legislature had believed that cancellation by

mailing was contrary to public policy it would not have adopted the legislation. *Id.* at 797, 345 P.2d at 7.

The reasoning of the court in *Jensen* is applicable here. Regulation XVI sanctions the policy and procedure whereby proof of mailing of notice of cancellation shall be sufficient proof of the giving of notice and therefore sufficient to effectuate cancellation of an automobile insurance policy. Unless the insurance commissioner exceeded his statutory powers in adopting such regulations, Conditions 16 and 17 are enforceable since they are included in the policy in conformity with a valid regulation which expressly sets forth the public policy on this question. We hold, therefore, that the trial justice erred in adopting the minority view because the public policy issue has been foreclosed by the promulgation of Regulation XVI. The promulgation of that regulation compels us to follow the majority rule and uphold as valid a provision in an automobile insurance policy which provides that the mailing of a notice of cancellation is sufficient proof of notice and that proof of receipt of notice is not required.

In the case at bar the trial justice found as a fact that Mrs. Pono did not actually receive notice of the cancellation of the policy. As we have already stated, such receipt was not required. However, even though cancellation may be effectuated by mailing and even though proof of mailing is deemed to be sufficient proof of the giving of notice, the question remains whether the third-party defendants have proven that there was a "mailing" of the notice of cancellation as required by the pertinent policy provisions. The trial justice made no finding on this question; he found merely that the notice was not received by Mrs. Pono, not that it was not mailed.

The determination of the question of whether there was a "mailing" of the notice of cancellation is necessary for a resolution of this appeal. Because they relied on the

defense of cancellation, the burden of proof was on the third-party defendant insurers to establish the mailing of the cancellation notice. *Blomquist* v. *Grays Harbor Medical Serv. Corp.*, 48 Wash.2d 718, 721, 296 P.2d 319, 321 (1956). The determination of this question involves factfinding and ordinarily we do not indulge in factfinding. That is the function of the factfinder and not of this court. In our judgment, the case should be remanded to the Superior Court for the sole purpose of affording that court the opportunity of resolving the question of whether or not there was a mailing of the notice of cancellation as required by the pertinent provisions.

The judgment appealed from is vacated and the case is remanded to the Superior Court for the sole purpose of resolving the question of whether or not there was a mailing of the notice of cancellation as required by the pertinent provisions.

It is so Ordered.

## Appendix

The pertinent portions of Conditions 16 and **17** of the policy read as follows:

"16. Cancelation. This policy may be canceled by the insured named in Item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of

such written notice either by such insured or by the company shall be equivalent to mailing.

"If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective but payment or tender of unearned premium is not a condition of cancelation.

"17. Cancelation by Company Limited. Part I.   After this policy has been in effect for sixty days or, if the policy is a renewal, effective immediately, the company shall not exercise its right to cancel the insurance afforded under Part I unless:

1. the named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof whether payable directly or under any premium finance plan; or * * * * * * * * * * ."

*Raymond R. Pezza,* for Elizabeth D. Pono.

*Francis V. Reynolds, Anthony F. DeMarco,* of Counsel, for Auto Club Insurance Agency, Inc. and Lumbermens Mutual Casualty Company.